We'll hear the first case on calendar. I see counsel here. Good morning. Fresno County v. Isaacson. Good morning. May it please the Court. I'm Eric Alan Isaacson representing the Isaacson Weaver Family Trust as an objector to an attorney's fee award in a federal securities class action. The basic question in the case is what's a reasonable attorney's fee in a contingent fee class action litigation, particularly in a case such as this where the claims are subject to a fee-shifting regime, there being multiple fee-shifting provisions in the federal securities laws. The Supreme Court has held— Whether they are is an open issue, but that's an issue for us to decide, whether they're subject to a fee-shifting claim, right? Whether these particular claims are subject to fee-shifting provisions— There's 10b-5 claims. There are 10b-5 claims in the case. There's no fee-shifting arrangement in 10b-5. You have to convince us that for some reason, either through the Private Securities Litigation Reform Act or some other provision, that 10b-5 has a fee-shifting provision in it. You seem to assume that it does, and I'm telling you I don't have that assumption. Section 10b-5 has no provision in it for a private cause of action of any kind. The Supreme Court in a series of cases has said that when there is a question about what rules ought to govern 10b actions, you look to the pertinent express remedies in the federal securities laws. Fee-shifting arrangements are the exception of the rule because they go against the American rules. So one would think that we would require it to be fairly expressed before we imply it into a statute, and no court has implied it into 10b, have they? I don't believe so. Section 9e, as codified in or as amended in 1934, or as codified in 1934, has an express provision for fee-shifting. Section 18 has an express provision for fee-shifting. Well, Congress knows how to do that. Congress knows how to do that. And how long have 10b-5 claims been around? Since blue chip, right? Since blue chip in the 1940s. How long was that? That's quite a while, Your Honor. How long? More than 50 years, Your Honor. So 50 years Congress has had to insert the fee-shifting arrangement, and they know how to do it, and they haven't done it. Don't you think we ought to take notice of that? Well, I think the Court had 40 years to or Congress had 40 years to insert a right to contribution in Section 10b, and it never did that. But the Supreme Court held in Music-Peeler in 1993. Excuse me. That's considerably different than abrogating the American rule, which doesn't impose attorney's fees on parties. Creating a right to recovery among wrongdoers is pretty remarkable, and it's not something the Supreme Court willingly implies. Go ahead. There are a number of cases where it has said it won't do that. And I'd like to point out as well that in 1995, in the Private Securities Litigation Reform Act, Congress expressly provided in Section 21-DA8 of the 34 Act, quote, in any private action arising under this chapter that is certified as a class action, the Court may require an undertaking for the payment of fees and expenses that may be awarded under this subsection. So it clearly indicates that fees and expenses may be awarded under this subsection. Which subsection do you think? It's referring to subsection AA. It's not a subsection. It says this subsection, which means subsection A. Because it refers to itself, it creates an attorney's fee. Well, it says you can have an undertaking for costs. Could we be influenced by the committee report that suggests that that provision is inserted for the purpose of securing attorney's fees in the event of a Rule 11 violation? The conference report indicates that it will also serve that function, absolutely. But that doesn't mean that that's the exclusive function it serves. It clearly indicates that fees can be awarded under this subsection. The conference report also indicates that they intend to have a provision like was present in Section 9 and Section 18, which you see. After the conference specifically noted that the fee-shifting arrangement had been removed. Well, the fee-shifting arrangement is right there. I mean, the fee-shifting. Whether maybe it referred only to Rule 11 violations as opposed to a fee-shifting arrangement in general. Well, it says in this subsection, the Rule 11 violations provision is a different subsection, subsection C. And as you pointed out. Let's presume you're right. Let's presume you're right. Yes, Your Honor. That there is a fee-shifting arrangement. Let's take it as a given that it is. Our cases seem to indicate that you would still not prevail. Because this is a settlement. This is not a judgment. Your cases have not considered the fact that when the Supreme Court has held in Purdue most recently in 2010, that the Supreme Court held that a reasonable attorney's fee sufficient to compensate counsel, sufficient to attract counsel to prosecute cases, is their reasonable hourly rate. Now, that's something that this Court's opinions have not addressed. As a matter of logic, how could that attract counsel if there's a risk of getting nothing at all? The only way you could compensate people for getting nothing at all is if you added something on top of the reasonable, ordinary, commercially recognized fees to reflect the risk of getting nothing. I think Professor Charles Silver just made that argument to say that Purdue is wrong. And if you want to hold the Supreme Court is wrong, I hope your opinion will make that clear. Because the Supreme Court's holdings. You don't have to talk like that to us. I'm sorry, Your Honor. You should be. I apologize. The Supreme Court's opinion in Purdue says that a reasonable fee is sufficient to induce a capable attorney to undertake the representation of a meritorious case. The lodestar method yields a fee that is presumptively sufficient to achieve this objective. And it says that an enhancement above. Do you hear the word presumptively? It says presumptively yes. You know, some class actions are really shooting fish in a barrel. Some class actions are shooting fish in a barrel. And I don't think that Congress intends to have counsel compensated for bringing cases that are almost certain losers. I mean, you could say the case was almost a certain loser. Therefore, counsel should have a tremendously high fee. Most cases are in between there, including almost every case I ever had. Also, as this court pointed out in Goldberger, the risk is minimal in federal securities class actions. Over 90 percent of them settle, and the risk of non-recovery of attorney's fees is completely avoided when these cases settle. People don't take them to trial. And when you see cases go to trial, the urethane antitrust case, which are subject to a securities or subject to a fee-shifting provision, they got a jury verdict of a billion dollars. Time comes to apply for attorney's fees, and the plaintiff's lawyers say, no, no, no, don't give us fees yet. We don't want fees yet. Wait until the defendants have done their appeal. Ultimately, the defendants lose before the Tenth Circuit, and the defendants then petition for certiorari. In the fee-shifting cases, the rationale for the use of the Lodestar as opposed to percentages is because the fact that the defendant shouldn't pay the cost of the risk that the plaintiffs and their plaintiff's counsel seem to assume on the contingency fee basis. But here, the defendants aren't paying the fee. They're creating a common fund that they've agreed to. You haven't objected to either, A, the amount of the fund, nor have you objected that the compensation is unreasonable, have you? I believe that the compensation is unreasonable given Purdue, yes, the holding of Purdue. You object to the way it's calculated, right? Yes. And I think it's excessive. And I want to say that in this court in Grinnell, 560 F. 2nd at 1101 addressed the question of sharing the risk of loss in the other cases. And this court said, and I quote at page 1101, we reject Apley's arguments that compensation should be generously granted for successful class action settlements in order to offset the cost of attorney time and effort expended on unsuccessful cases. But the fee's coming out of what the plaintiffs get. And so it's coming out of a party's funds, which did share in the appreciation of a need for a contingency, that there might be a success or failure. Why doesn't it make sense that you adhere to the party's agreement for a contingency arrangement, as opposed to the situation where the defendants shouldn't have to be placed under that burden? That's the rationale. There's no party's— Excuse me. That's the rationale for the lodestar. There's no party's agreement in a contingent fee class action. Except for named plaintiffs. The named plaintiffs, and this court has repeatedly rejected the contention that the named plaintiffs' agreement should control. I have a question before you. Yes, Your Honor. Even if fee shifting is allowed, is it an abuse of discretion for the district court to rely on the common fund instead of fee shifting? Well, I don't think it's an abuse of discretion to use a common fund award. This court held in Goldberger that a common fund award has to be determined on the facts of the case. At Goldberger's securities class action, the court said risk of non-recovery is low. There was a governmental action, as here. Pardon me? If it's not an abuse of discretion, what standard would we apply to this? I think the standard is, as Goldberger says, if they go with a percentage as a request for the fee, you need to cross-check it. You need to cross-check it against lodestar. And the Supreme Court in Purdue says lodestar is a reasonable attorney's fee that adequately compensates counsel and attracts them to do the case. I know Charles Silver says that's wrong, but that's what the Supreme Court holds, Your Honor. And it sends perverse incentives to tell lawyers you can get a multiple of your reasonable hourly rate if you compromise claims as compared to winning them. Thank you. Good morning, Your Honors. Hannah Ross on behalf of lead plaintiff Fresno County. Your Honors, the Supreme Court, this circuit, and every other regional circuit have all held percentage fees or lodestar multipliers are appropriate in common fund settlements and securities and other class actions. The Supreme Court had that ruling in Boeing v. Gammert and Blum v. Stenson. This court ruled that way in Goldberger, in Nortel Networks, in McDaniel v. County of Schenectady, and in Walmart. What do you say about the provision in the PSLRA that says that the total attorney's fees and expenses shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class? Your Honor, Congress knows how to draft fee-shifting provisions. If Congress wanted that to be a fee-shifting provision, Congress could have— No, I'm not sure that that's talking about a fee-shifting. It could apply as well to what lawyers get from a common fund, couldn't it? Well, the reasonable percentage, Your Honor, gives the courts flexibility to, on a case-by-case basis, determine what is appropriate on the facts and circumstances of that case. But it is based upon what's actually paid to the class, because that's what it says in words. Yes, that's how common fund cases work, Your Honor. Do we know what's going to be actually paid to the class members in this instance? In this instance, Your Honor, the settlement fund was $10.9 million. How much of that is going to go to the class? The class will get . . . Oh, my gosh. Our attorney's fees were $1.39 multiplier, and so the class will get that amount less. You're saying that . . . What happens if money's left over? In that circumstance, Your Honor, that money, we would distribute it as many times as it can be effectively distributed. When there is a remainder amount, that does get donated to a charitable cause. We do not take . . . Which is not in the class. How could there be a remainder amount? Doesn't it all go to the plaintiffs? Everything we do in our power goes to the plaintiffs, Your Honor. But at some point, if people do not cash checks, and you are left with a very small amount, that it is more costly for the administrator to then redistribute it to the class members in those circumstances. And do they not cash the checks because they're so small that it's not worth the effort? Your Honor, we do have usually a cutoff because we do try to make sure that everyone does get a worthwhile check to cash. Usually it's an amount that the district court approves. The plaintiffs were in this class. Your Honor, the notice went out to 33,600 potential claimants. There's no objection. Your opponent doesn't object to the amount of the settlement. He does not . . . There is no objection. There is no objection to the settlement. The only issue in front of us is how to calculate attorney's fees. That is correct, Your Honor. That is the only issue. And under the PSLRA statute, the district court, Judge Nathan, had discretion. And she observed the case. We were in front of her for several years. And at the hearing, after everything she knew in the case, she determined that a 1.39 multiplier was appropriate in this case. And it was consistent with the law of the circuit, the law of the Supreme Court, as well as the PSLRA. It would certainly appear that if you send a check to somebody and they don't cash it, that you've paid them. I mean, you know, if you pay for a meal and the restaurant never goes to American Express to collect it, you've paid for it. But my interest is what happens with the money that doesn't go to the class at all? You're going to get your percentage, and it may very well be a reasonable percentage, of money that doesn't go to the class at all. Because it goes to a charity. What charity, by the way? Your Honor, I do not have that. I do not believe that. That only occurs if people don't cash their checks and you have a fund that's . . . And this happens a lot with class actions. I mean, there's a case in the United States Supreme Court that was just argued, Frank Vigal, in which the question is, can you interpret it up front? Well, the question is whether you can or not. But it's very common among class actions that where there's a distribution and some people just don't . . . They don't take a check for a dollar and a half or whatever it is, and then ultimately the court then identifies that sum and it's distributed. It doesn't go to you. It does not go to us. We do not take anything more than we are authorized by the court, but . . . Some people will not cash a check for a buck and a half. Not everybody is a federal judge. Your Honor, I just feel like I would like to clarify this because I think that I might have given you the wrong impression. It's not that we just send a check once and it doesn't get cashed. If there is a check that's outstanding, we and the claims administrators make multiple and multiple efforts to make sure that every class member who has submitted a claim form is reimbursed. As part of the process when we're working through claim forms, we do hold back a very small amount in case there is some type of dispute that is ongoing. At the end of the entire process, if there is a tiny amount left, under the case law, we are permitted to donate that money to charities. Do you know what the average check was of those 33,000 claimants? Are those people . . . Did 33,000 people file claims? Your Honor, I do not believe that 33,000 people filed claims. I believe I have the . . . Aren't many of them grouped by institutional investors? So an institutional investor may make a claim on behalf of 1,000 people? That's the way it used to work. Some do, yes. That doesn't mean that . . . Do you know what the average check was per claim? I don't have that, Your Honor. I can find that out and follow that up. I don't have that. Your Honor, because the issue that Mr. Isaacson has raised is to the attorney's fees that we were awarded, that District Judge Nathan awarded us, which is consistent with this court's statute, this longstanding precedent in this court, that the securities laws are not fee-shifting laws. This court has made that clear on numerous occasions. They were, as I asked opposing counsel. It's a committed to the discretion of the court when there's a common fund to adopt that methodology as opposed to fee-shifting. Isn't that available to the district court? Your Honor, fee-shifting is not available to the court in . . . Even if it was, just for the sake of this argument . . . Yes. . . . say there was an arguable . . . an argument made that fee-shifting was available, it wouldn't be mandatory. The district court could still rely on the common fund methodology to award fees. Isn't that correct? That is correct. It would be up to . . . It would depend on how the statute was written and depend on what the court in the court's discretion decided to do. But even if the securities laws were fee-shifting laws, for argument's sake, which we contend they are absolutely not, if a fee-shifting case . . . if a case was initiated under fee-shifting statutes, but settled and resolved under common fund principles, that is a common fund case, and it is not subject to the fee-shifting requirements. Aig and Perdue, both were judgments, right? Yes, they were. The open issue is, if we presumed that a fee-shifting statute did apply, I realize that you contest that it does. Correct. This is kind of an interesting journey through law writing in terms of that reference that your opponent points to, this subsection, the language of this subsection. But even presuming that it does, Aig and Perdue cover what attorney's fees calculations when there's a judgment of conviction, where the defendant is going to pay the attorney's fees. The question is, do Aig and Perdue, the logic of those cases, with fee-shifting statutes in place, do they apply to common fund settlements in situations such as this? I mean, that's really the issue, isn't it? Yes, and the answer to that, Your Honor, is no. Tell me why. Every circuit that has considered this has rejected that. Beyond the circuits, I'm not . . . a line of circuits, six or seven circuits, can be wrong. All there needs to be is one circuit that's right, and the Supreme Court can tell us that they were the right people. We've had that happen to all of us on this panel. So, we enjoy it when we're the one circuit, but tell us the reasons why it's right. Because the way fee-shifting statutes are, it is charging the defendant for the attorney's fees. That is against the American rule. The only time . . . the American rule, from time immemorial, I think, to quote one of this Court's decisions, has been that litigants pay their own costs unless there are exceptions. And that is because it's not fair to the defendant to have to pay those costs. So, there are specific enumerated circumstances when that happens. In those cases, the defendant has already paid damages to the class, if it's an appropriate case to do that. And so, this is attorney's fees on top of it. By contrast, the principles in the Common Fund are equitable principles. A plaintiff has a wrong that they wanted to get redressed. And so, they make an agreement with a lawyer, and they don't pay the ongoing fees. They don't take on the risk of non-payment. But if the lawyer is successful, the lawyer who bear the risk, and who had the risk of no payment, at that point is able to share and have the beneficiaries pay a pro rata amount of that fee. But your opponent correctly points out that this client isn't a party to any contingency fee arrangement with you. I mean, with the lawyers that were representing the various plaintiffs, and you were selected as lead counsel. Your firm was fortunate enough to be selected as lead counsel. And so, he says, well, we don't have an arrangement with you, so we didn't assume the risk. What's your response to that? Well, Mr. Isaacson could have brought his own action, an individual action against- He could have opted out. He could have opted out. He could have paid his own attorney's fees if he wanted to proceed against bioscript. But to address what he said, the lead plaintiff is a sophisticated institutional investor. As this court identified in Nortel, that institutional investors, which is what Congress wanted, have significant financial stakes in the outcome. They have a powerful incentive to make sure that the fee is reasonable. And in the Flanagan case, the circuit did say that there is a deference that goes to what lead counsel and the lead plaintiff decide for those fees. Thank you. Thank you very much, Your Honors. Mr. Isaacson. Thank you very much, Your Honor. Mr. Isaacson, I just want to ask one question. I know this case is only about fees, but is there any intimation in your mind that counsel had a disincentive to try this case and settled just to get the fee? I have not evaluated the terms of the settlement, Your Honor. You didn't object to it. No, I did not object to that. So the answer is you didn't object to it. Absolutely I didn't object to it. Okay, fair enough. Absolutely. And one of the reasons that I didn't even consider objecting to it was the assertion that the company was in financial distress and might not be able to pay if there weren't a settlement. I didn't want to block a settlement. It was going to result in no recovery at all. I never objected. I never investigated any of that. Well, whether you did or you didn't, I mean, I'm not penalizing you for saying that, but the fact is that in front of us the settlement is not objected to in terms of the settlement. I do not object to the settlement and do not contend it's a bad settlement. Now, Judge Jacobs, I believe you referenced Section 21dA6 of the Exchange Act added by the PSLRA, which says that fees and expenses, quote, shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class, end quote. What it says is that a fee award shall not exceed a reasonable percentage. If Congress had wanted percentage fee awards, it would have said shall be a reasonable percentage or would have said shall be calculated as a reasonable percentage. The conference report shows that Congress understood that fee awards would be calculated on the basis of Lodestar, which could be adjusted just as Purdue says Lodestar fee awards in extraordinary cases can be adjusted, and it intended to put a cap on Lodestar awards. The word reasonable would seem to suggest discretion. Absolutely. Discretion is never a fixed point. It's always a range, and when that's used in terms, I mean, Congress could have said 25 percent, 30 percent, and 25 percent wouldn't be enough for a small settlement, and it might be grossly excessive for a billion-dollar settlement. So obviously it has to be reasonable, and I'm not sure I know why you think this one is not reasonable. Well, because it substantially exceeds the attorney's Lodestar, which is their reasonable hourly rate, which the Supreme Court in Purdue held in a contingent fee class action is presumptively the reasonable fee award. And a district court judge who's acting as a fiduciary to the class and as a fiduciary for the interest of the class, I would submit, needs to express extraordinary reasons for paying the attorneys out of the class's recovery substantially more than their Lodestar when the Supreme Court says the Lodestar is presumptively enough to attract class counsel and presumptively reasonable compensation for their work in a contingent fee class action. Thank you. Thank you. Thank you very much. We'll reserve decision.